IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **MIRARCHI BROTHERS, INC.,** <br><br> Defendant. | CIVIL ACTION <br><br> NO. 21-4399-KSM |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                                                                  December 8, 2021

Presently before the Court is Defendant Mirarchi Brothers, Inc.'s Motion to Vacate Default Judgment Pursuant to Federal Rules of Civil Procedure 55(c).  (Doc. No. 8.)  For the reasons below, Defendant's motion is denied.

**I.     BACKGROUND**

*A.     The Underlying Lawsuit*

Defendant is an electrical contractor that has signed collective bargaining agreements ("CBAs") with several local unions.  (Doc. No. 1 ¶ 7.)  Under the terms of the CBAs, Defendant is required to report and submit contributions to the National Electrical Benefit Fund (the "Benefit Fund") and the National Electrical Annuity Plan (the "Annuity Plan") on behalf of its employees performing work within the jurisdiction of the local unions.[1]  (*Id.* ¶ 8.)  Although

---

[1] The CBAs authorize the Trustees of the Benefit Fund and the Trustees of the Annuity Plan to recover interest at a rate of 10% per annum on delinquent contributions, liquidated damages equaling 20% of the delinquent contributions, and all costs, including attorneys' fees, incurred in collecting on any

Defendant submitted reports showing it was obligated to make contributions required by the CBAs (*id.* ¶ 10), it has failed to make the requisite contributions for the past year (*id.* ¶¶ 16, 27). From July 2020 through August 2021, Defendant accrued $177,767.80 in delinquent contributions to the Benefit Fund (*id.* ¶ 17), and from December 2020 through August 2021, Defendant accrued $797,320.16 in delinquent contributions to the Annuity Plan (*id.* ¶ 28).

On October 6, 2021, Plaintiffs, the Trustees of the Benefit Fund and the Trustees of the Annuity Plan, brought suit against Defendant to collect the delinquent contributions pursuant to the CBAs and the Employment Retirement Income Security Act ("ERISA") Sections 502(g) and 515.[2] (*Id.*) Plaintiffs also sought to recover interest, liquidated damages, and attorneys' fees. (*Id.* ¶¶ 18–19, 29–30; Doc. No. 6 at 1.)

### B.     *Procedural History*

Plaintiffs made personal service on Defendant through a private process server on October 11, 2021. (Doc. No. 2.) Defendant's responsive pleading was due on November 1, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), but it did not appear, answer, or otherwise respond. On November 2, Plaintiffs requested that the Clerk of Court enter default against Defendant. (Doc. No. 3.) The Clerk of Court entered default on November 4 (*id.*), and Plaintiffs moved for default judgment on November 11 (Doc. No. 4).

Shortly after receiving Plaintiffs' motion, this Court set a hearing for November 30 to show cause why judgment should not be entered and to assess damages (the "Show Cause

---

delinquency. (Doc. No. 1 ¶¶ 15, 26.)

[2] Prior to filing this lawsuit, the Plaintiffs attempted to negotiate a payment plan with Defendant. When the negotiations appeared to stall, the Plaintiffs' general counsel informed Defendant that the Plaintiffs would be filing suit if they were unable to agree on a payment plan by a certain date. (*See* Nov. 30, 2021 Hr'g Tr. at 12:19–24 ("The general counsel for these funds identified myself and the firm I work for in e-mails saying if we cannot resolve this by Date X, it is going to be referred to Daniel Keenan at O'Donoghue & O'Donoghue LLP to file an action under 515 in this court.").)

Hearing"). (Doc. No. 5.) The Court also ordered Plaintiffs to "serve copies of the motion for default judgment, the affidavit detailing attorney's fees and costs, and [the order setting the show cause hearing] upon Defendant, personally, by email and by certified mail, return receipt requested, no later than November 22, 2021." (*Id.* at 1–2.) Plaintiffs timely served upon Defendant (via process server and certified mail) the Motion for Default Judgment, the Motion for Attorneys' Fees and Costs, and the Order setting the Show Cause Hearing. (Doc. No. 7 ¶¶ 4–5.) On November 22, Plaintiffs' counsel also emailed those documents to Defendant's comptroller and Daniel Siedman, an attorney Plaintiffs knew had represented Defendant in a recent bankruptcy proceeding. (Doc. No. 7-3; Nov. 30, 2021 Hr'g Tr. at 5:23–6:13.)

Upon receipt of the email from Plaintiffs' counsel, Mr. Siedman reached out to Defendant and explained the situation it was facing. (Nov. 30, 2021 Hr'g Tr. at 3:4–8; 4:21–5:8.) At this point, Defendant agreed to retain Mr. Siedman to represent it in these proceedings. (*Id.*) On the eve of the Show Cause Hearing, Defendant filed a Motion to Vacate Default Judgment.[3] (Doc. No. 8.) Given Defendant's last-minute motion, the Show Cause Hearing was converted from a hearing on Plaintiffs' Motion for Default Judgment into a hearing on Defendant's Motion to Vacate Default Judgment. (*See generally* Nov. 30, 2021 Hr'g Tr.) Subsequently, Plaintiffs filed a response brief opposing Defendant's motion. (Doc. No. 11.)

## II.   LEGAL STANDARD

"The court may set aside an entry of default for good cause. . . ." *See* Fed. R. Civ. P. 55(c). In determining whether good cause exists to set aside default, a court must consider the following factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a

---

[3] Because the Court has not entered a default judgment in this case, we interpret this as a motion to set aside default. This distinction is of no practical import, however, because the standard for vacating default is the same as the standard for vacating a default judgment. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

meritorious defense; and (3) whether the default was the result of the defendant's culpable conduct.  *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  Ultimately, the decision to set aside default "is left primarily to the discretion of the court."  *Id.* at 194 (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

### III.   DISCUSSION

The Court considers each of the three factors in turn.

#### A.   *Meritorious Defense*

The "threshold question" in determining whether to vacate default is "whether the defendant has alleged facts which, if established at trial, would constitute a meritorious defense to the cause of action."  *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.*, No. Civ. A. 04-3393, 2004 WL 2609119, at *2 (E.D. Pa. Nov. 16, 2004).  Generally, "a federal court will grant a motion under Rule 55(c) only after some showing is made that if relief is granted the outcome of the suit may be different than if . . . the default . . . is allowed to stand."  *See id.* (quoting CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 2697 (3d ed. 1998)).  A defense is meritorious when "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action."  *$55,518.05 in U.S. Currency*, 728 F.2d at 195.  To determine whether a defendant's answer establishes a "complete defense," the court must look to the underlying action.  *Id.*

Here, Plaintiffs seek delinquent pension contributions, interest, liquidated damages, and costs pursuant to Sections 502(g) and 515 of ERISA.  (Doc. No. 1.)  Defendant concedes that it is obligated to pay the delinquent contributions (*see* Nov. 30, 2021 Hr'g Tr. At 16:19–21 ("[T]o the extent that the contributions are past due, yes.  We have no defense to the amounts set forth.") but argues that it is not required to pay interest, liquidated damages, and costs because it

4

plans to "cure the past-due contributions." (Doc. No. 8-1 at 4.) This purported defense has no merit. Even if Defendant satisfied its delinquent contributions right now, Plaintiffs would still be entitled to interest, liquidated damages, and costs.

Section 515 requires employers to make contributions to a plan, such as the Benefit Fund and the Annuity Plan, "in accordance with the terms and conditions of [a collective bargaining] agreement." 29 U.S.C. § 1145. If an employer fails to make the requisite contributions, the plan may bring an action in federal district court pursuant to Section 502(g) of ERISA. *Id.* § 1132. "The special remedy against employers who are delinquent in meeting their contractual obligations that is created by § 502(g)(2) includes a *mandatory award* of prejudgment interest plus liquidated damages in an amount at least equal to that interest, as well as attorney's fees and costs." *Laborers Health & Welfare Tr. Fund for N. Cal. v. Adv. Lightweight Concrete Co.*, 484 U.S. 539, 547 (1988) (emphasis added). Put differently, where a court enters judgment against a defendant-employer for failure to make contributions to a plan, the court *must* award interest, liquidated damages, and attorneys' fees. *See Trucking Emps. of N. Jersey Welfare Funds, Inc. v. Bellezza Co.*, 57 F. App'x 972, 975 (3d Cir. 2003) ("Under the delinquent contribution provisions, Congress has deemed certain remedies *mandatory* in an action brought by a pension fund to enforce the collection of contributions. . . . Such remedies encompass interest on the unpaid contributions; . . . [liquidated damages in] an amount not in excess of 20% of the principal due; and reasonable attorney's fees and costs of the action." (emphasis added)); *Trs. Of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund v. Sky High Mgmt., LLC*, Civil Action No. 20-9339 (CCC), 2021 WL 3561248, at *2 (D.N.J. Aug. 11, 2021) (entering default judgment and awarding "unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and such other relief as the Court deems appropriate under

Section 502(g)"); *Carpenters Health & Welfare Fund of Phila. v. NDK Gen. Contractors, Inc.*, Civil Action No. 06-3283, 2007 WL 1018227, at *1–3 (E.D. Pa. Mar. 29, 2007) (entering default judgment and awarding the plaintiffs unpaid contributions, attorneys' fees, interest, and liquidated damages because "ERISA § 502(g)(2) provides that . . . the court 'shall award' the interest owed on the unpaid contributions plus . . . liquidated damages").

Because Defendant does not contest that it is delinquent on contributions and, as a matter of law, the Court *must* award interest, liquidated damages, and attorney's fees, Defendant does not have a meritorious defense against Plaintiffs' claims. As such, this factor weighs strongly in favor of not setting aside the default.

### B.     *Culpable Conduct*

Next, the Court must consider whether the default was the result of Defendant's culpable conduct. To establish culpability, "more than mere negligence [must] be demonstrated." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1183 (3d Cir.1984). Culpable conduct can be inferred from a defendant's "[r]eckless disregard for repeated communications from plaintiffs and the court." *Id.*; *see also, e.g.*, *Travelers Cas. & Surety Co. of Am. v. Perlman*, 351 F. Supp. 3d 930, 933–34 (E.D. Pa. 2019) ("[A]lthough Defendants were properly served, notified by the Court that they needed to respond to the complaint, and received additional time to respond to the complaint, they never answered the complaint or otherwise appeared in this case. Therefore, the court can 'find no excuse for default, apart from Defendants' own culpability.'" (quoting *Einhorn v. Klayman Produce Co.*, Civil Action No. 13–1720, 2013 WL 6632521, at *4 (E.D. Pa. Dec. 17, 2013))); *E. Elec. Corp. of N.J. v. Shoemaker Const. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009) ("[Cross-claim defendants] have not engaged in the litigation process and have offered no reason for this failure [to respond] or refusal. The Court finds that this conduct qualifies as

6

culpable conduct with respect to the entry of a default judgment—indeed, for the Court to conclude otherwise would be to reward the recalcitrant or the oppositional and uncooperative.").

Here, Defendant failed to answer, appear, or plead in response to the summons and complaint and only appeared on the eve of the Show Cause Hearing, after Plaintiffs made further efforts to get Defendant to respond to the suit. Defendant argues that its failure to respond was "inadvertent," but it has not argued that it was unaware of the suit or that its failure to respond was otherwise accidental. (Doc. No. 8-1 at 5.) Instead, at the Show Cause Hearing, Defendant's counsel explained that his client *chose not to respond* to the complaint because it was struggling financially and was more focused on "keeping the lights on" than defending against this lawsuit. (*See* Nov. 30, 2021 Hr'g Tr. At 18:9–19:20 ("The best argument I can come up with [as to why Defendant is not culpable] is to the extent that they have been battling with the secured lender. They are fighting to keep the lights on every day. . . . They need to keep the doors open and the lights on to be able to pay back money. And that's where their primary and main focus has been.").)

This is no excuse. Defendant knew the suit was pending and actively chose not to respond. This conduct is both culpable and inexcusable, and there is no question that it caused the default. Accordingly, this factor also weighs in favor of not setting aside the default.

### C. *Prejudice*

Finally, the Court must consider whether the plaintiff will suffer prejudice if the default is set aside. "Prejudice may be shown if, *inter alia*, the non-defaulting party's 'ability to pursue the claim has been hindered since the entry of the default judgment'; if the non-defaulter has 'asserted loss of available evidence'; or if there may be 'increased potential for fraud or collusion, or substantial reliance upon the judgment.'" *Feliciano v. Reliant Tooling Co.*, 691

7

F.2d 653, 657 (3d Cir. 1982).  The "fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice." *J.K. ex rel. Kpakah v. CSX Transp.*, Civil Action No. 14–729, 2014 WL 4632356, at *4 (E.D. Pa. Sept. 16, 2014) (quoting *Choice Hotels Int'l, Inc. v. Pennave Assocs., Inc.*, 192 F.R.D. 171, 174 (E.D. Pa. 2000)).  Courts are less likely to find prejudice where the defendant moves to set aside default shortly after it was entered.  *See Blue Ribbon Commodity Traders, Inc. v. Progresso Cash & Carry*, Civil Action No. 07-4122, 2008 WL 2909360, at *3 (E.D. Pa. July 23, 2008) (holding that there was no risk of prejudice where defendant moved to set aside a default judgment seven days after the judgment was entered) (collecting cases).

Here, there is no suggestion that Plaintiffs' ability to pursue the claim or preserve evidence would be hindered if default were set aside, nor is there any suggestion that there would be an increased potential for fraud if default were set aside.  Moreover, although its motion is far from "timely," Defendant moved to set aside default less than one month after its answer was due and (barely) before a judgment was even entered.  Although Plaintiffs contend that they would be prejudiced if default is set aside because Defendant will continue to accrue delinquencies, and "the Plaintiffs will be left holding the bag," (Doc. No. 11 at 4–5), the Court does not agree.  Unfortunately, this will likely be the case even if default is *not* set aside.

Accordingly, the Court finds that Plaintiffs would not be prejudiced if default were set aside, and this factor weighs in favor of setting aside the default.

\*       \*       \*

Considering the factors together, and in particular the fact that the Court finds there is no meritorious dense to the cause of action, the Court will not set aside the default.

## IV. CONCLUSION

For the reasons above, the Court denies Defendant's motion to vacate the default. An appropriate order follows.