**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **MIRARCHI BROTHERS, INC.,** <br><br> Defendant. | **CIVIL ACTION** <br><br> **NO. 21-4399-KSM** |

<u>**MEMORANDUM**</u>

**MARSTON, J.**                                        **January 24, 2022**

Plaintiffs, Trustees of the National Electrical Benefit Fund (the "Benefit Fund") and Trustees of the National Electrical Annuity Plan (the "Annuity Plan"), brought suit against Defendant Mirarchi Brothers, Inc. to recover unpaid pension fund contributions.  (Doc. No. 1.)  Presently before the Court are Plaintiffs' Motion for Default Judgment (Doc. No. 4) and Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. No. 8).  For the reasons below, Plaintiffs' motions are granted.

## I.    BACKGROUND

### A.    *Factual Background*

Defendant is an electrical contractor that has signed collective bargaining agreements ("CBAs") with several local unions.  (Doc. No. 1 ¶ 7.)  Under the terms of the CBAs, Defendant is required to report and submit payroll reports and contributions to the Benefit Fund and the Annuity Plan on behalf of its employees performing work within the jurisdiction of the local

unions.[1]  (*Id.* ¶ 8.)  Although Defendant submitted reports showing it was obligated to make contributions required by the CBAs (*id.* ¶ 10), it has failed to make the requisite contributions for the past year (*id.* ¶¶ 16, 27).  From July 2020 through November 2021, Defendant accrued $432,016.65 in delinquent contributions to the Benefit Fund (Doc. No. 15 ¶ 6), and from December 2020 through November 2021, Defendant accrued $1,143,568.81 in delinquent contributions to the Annuity Plan (*id.* ¶ 7).[2]

On October 6, 2021, Plaintiffs brought suit against Defendant to collect the delinquent contributions pursuant to the CBAs and the Employment Retirement Income Security Act ("ERISA") Sections 502(g) and 515.[3]  (Doc. No. 1.)  Plaintiffs also seek to recover interest, liquidated damages, and attorneys' fees.  (*Id.* ¶¶ 18–19, 29–30; Doc. No. 6 at 1.)

### B.    *Procedural History*

Plaintiffs made personal service on Defendant through a private process server on October 11, 2021.  (Doc. No. 2.)  Defendant's responsive pleading was due on November 1, *see* Fed. R. Civ. P. 12(a)(1)(A)(i), but it did not appear, answer, or otherwise respond.  On November 2, Plaintiffs requested that the Clerk of Court enter default against Defendant.  (Doc.

---

[1] The CBAs authorize the Benefit Fund and Annuity Plan to recover interest at a rate of 10% per annum on delinquent contributions, liquidated damages equaling 20% of the delinquent contributions, and all costs, including attorneys' fees, incurred in collecting on any delinquency.  (Doc. No. 1 ¶¶ 15, 26.)

[2] The Complaint detailed Defendant's delinquent contributions to the Benefit Fund and the Annuity Plan through August 2021.  (*See* Doc. No. 1 ¶¶ 17, 28.)  On December 17, 2021, Plaintiffs filed an Affidavit Concerning Newly Discovered Amounts Due Plaintiffs, which detailed the Defendant's delinquencies, based on its self-reported work performed, from September through November 2021.  (*See* Doc. No. 15.)

[3] Prior to filing this lawsuit, Plaintiffs attempted to negotiate a payment plan with Defendant. When the negotiations appeared to stall, Plaintiffs' general counsel informed Defendant that Plaintiffs would be filing suit if they were unable to agree on a payment plan by a certain date.  (*See* Nov. 30, 2021 Hr'g Tr. at 12:19–24 ("The general counsel for these funds identified myself and the firm I work for in e-mails saying if we cannot resolve this by Date X, it is going to be referred to Daniel Keenan at O'Donoghue & O'Donoghue LLP to file an action under 515 in this court.").)

No. 3.)  The Clerk of Court entered default on November 4 (*id.*), and Plaintiffs moved for default judgment on November 11 (Doc. No. 4).

Shortly after receiving Plaintiffs' motion, the Court set a hearing for November 30 to show cause why judgment should not be entered and to assess damages (the "Show Cause Hearing").  (Doc. No. 5.)  The Court also ordered Plaintiffs to "serve copies of the motion for default judgment, the affidavit detailing attorney's fees and costs, and [the order setting the show cause hearing] upon Defendant, personally, by email and by certified mail, return receipt requested, no later than November 22, 2021."  (*Id.* at 1–2.)  Plaintiffs timely served upon Defendant (via process server and certified mail) the Motion for Default Judgment, the Motion for Attorneys' Fees and Costs, and the Order setting the Show Cause Hearing.  (Doc. No. 7 ¶¶ 4–5.)  On November 22, Plaintiffs' counsel also emailed those documents to Defendant's comptroller and Daniel Siedman, an attorney Plaintiffs knew had represented Defendant in a recent bankruptcy proceeding.  (Doc. No. 7-3; Nov. 30, 2021 Hr'g Tr. at 5:23–6:13.)

Upon receipt of the email from Plaintiffs' counsel, Mr. Siedman reached out to Defendant and explained the situation it was facing.  (Nov. 30, 2021 Hr'g Tr. at 3:4–8; 4:21–5:8.)  At this point, Defendant agreed to retain Mr. Siedman to represent it in these proceedings.  (*Id.*)  On the eve of the Show Cause Hearing, Defendant filed a Motion to Vacate Default Judgment.[4]  (Doc. No. 8.)  Given Defendant's last-minute motion, the Show Cause Hearing was converted from a hearing on Plaintiffs' Motion for Default Judgment into a hearing on Defendant's Motion to Vacate Default Judgment.[5]  (*See generally* Nov. 30, 2021 Hr'g Tr.)

---

[4] Because the Court had not entered a default judgment in this case, we interpreted this as a motion to set aside default.  This distinction was of no practical import, however, because the standard for vacating default is the same as the standard for vacating a default judgment.  *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

[5] Although the Show Cause Hearing was converted to a hearing on Defendant's Motion to Vacate Default Judgment, the Court need not hold another Show Cause Hearing, as Defendant has conceded that

Subsequently, Plaintiffs filed a response brief opposing Defendant's motion.  (Doc. No. 11.)  The Court denied Defendant's Motion to Vacate Default Judgment on December 8, 2021.  (Doc. No. 13.)

## II.   LEGAL STANDARD

After the Clerk of Court enters default against a party who "has failed to plead or otherwise defend," the court may enter judgment against the defaulting party.  Fed. R. Civ. P. 55; *see also Serv. Emps. Int'l Union Local 32BJ, Dist. 36 v. Shamrockclean, Inc.*, 325 F. Supp. 3d 631, 634 (E.D. Pa. Sept. 7, 2018).  The determination of whether to enter default judgment "is left primarily to the discretion of the district court."  *Perez v. Kwasny*, No. CIVIL ACTION NO. 14-4286, 2016 WL 558721, at *2 (E.D. Pa. Feb. 9, 2016) (quoting *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)).

In assessing whether default judgment is appropriate, the court must first "ascertain whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law."  *Walsh v. Satori Grp., Inc.*, CIVIL ACTION NO. 20-3906-KSM, 2021 WL 2072237, at *3 (E.D. Pa. May 24, 2021) (quoting *Serv. Emps. Int'l*, 325 F. Spp. 3d at 635)).  Once the court has determined that the complaint alleges a "legitimate cause of action," it must consider the three factors outlined in *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000):  "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct."[6]

---

it has no reason to dispute the delinquencies as calculated.  (*See* Nov. 30, 2021 Hr'g Tr. at 3:22–23; 16:19–21.)

[6] Courts also consider the six factors outlined in *Poulis v. State Farm Fire and Casualty Co.*, 747 F.2d 863, 868 (3d Cir. 1984) where the defendant "has filed an answer or a responsive pleading but has then failed to properly participate in the litigation."  *Jimenez v. Rosenbaum-Cunningham, Inc.*, Civil

III.   **DISCUSSION**

   A.      ***Plaintiffs Have Stated a Claim***

Plaintiffs claim that Defendant failed to make contributions to the Benefit Plan and the Annuity Fund as required by the CBAs.  (Doc. No. 1 ¶ 10.)  Section 515 of ERISA requires employers who are "obligated to make contributions to a multiemployer plan . . . under the terms of a collectively bargained agreement" to make the requisite contributions.  29 U.S.C. § 1145; *see also Serv. Emps. Int'l*, 325 F. Supp. 3d at 636.  If an employer fails to make the requisite contributions, the plan may bring an action in federal district court pursuant to Section 502(g) of ERISA.  29 U.S.C. § 1132(g).  If judgment is entered in favor of the plan, the court must award the unpaid contributions, interest on the unpaid contributions at the rate provided under the plan, liquidated damages in the amount provided under the plan and reasonable attorney's fees and costs of the action.  *Id.*  The award of interest, liquidated damages, and attorney's fees is mandatory.  *Trucking Emps. of N. Jersey Welfare Funds, Inc. v. Bellezza Co.*, 57 F. App'x 972, 975 (3d Cir. 2003) ("Under the delinquent contribution provisions, Congress has deemed certain remedies mandatory in an action brought by a pension fund to enforce the collection of contributions. . . . Such remedies encompass interest on the unpaid contributions; . . . [liquidated damages in] an amount not in excess of 20% of the principal due; and reasonable attorney's fees

---

Action No. 07-1066, 2010 WL 1303449, at *2 (E.D. Pa. Mar. 31, 2010); *see also Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1148 (explaining that courts must consider the *Poulis* factors where default judgment is entered as a sanction).

   We need not consider the *Poulis* factors in this case.  Although Defendant moved to vacate the entry of default, it has not filed an answer.  The entry of default judgment is the result of Defendant's failure to timely appear and respond to the Complaint, not a sanction for Defendant's failure to participate in discovery or other features of the litigation process.  *Cf. Jimenez*, 2010 WL 1303449, at *6–7 (analyzing *Poulis* factors where defendant Cunningham "entered an appearance and filed a responsive pleading" but then "ignored Plaintiffs' discovery requests and [the court's] Order to respond to those requests"); *Kwasny*, 2016 WL 558721, at *1–2 (applying *Poulis* factors where defendant Kwasny "representing all of the Defendants in the case pro se, filed an answer to the Secretary's complaint" and filed a response to the Secretary's motion to strike).

and costs of the action.").

Plaintiffs allege that Defendant is a signatory to CBAs with Philadelphia-area chapters of the International Brotherhood of Electrical Workers.  (Doc. No. 1 ¶ 7.)  The CBAs require Defendant to report the gross labor payroll that it paid to bargaining union workers each month and pay three percent of the reported amount to the Benefit Fund and twenty-five percent of the reported amount to the Annuity Plan.  (*Id.* ¶ 8; Doc. No. 4 at 4.)

The CBAs also bind Defendant to the terms and conditions of the Restated Employees Benefit Agreement and Trust for the Benefit Fund and the Agreement and Trust for the Annuity Plan (together, the "Trust Agreements").  (Doc. No. 1 ¶¶ 14, 25.)  If Defendant is delinquent on contributions to either the Benefit Fund or the Annuity Plan, the Trust Agreements authorize the Trustees of the Benefit Fund and/or the Annuity Plan to recover interest on the delinquent contributions at a rate of ten percent per annum, liquidated damages in an amount equal to twenty percent of the delinquency, and attorneys' fees and costs.  (*Id.* ¶¶ 15, 26.)

Plaintiffs allege that Defendant has reported its gross labor payroll monthly but has not made the requisite contributions to the Benefit Fund since June 2020 or to the Annuity Plan since December 2020.  (*Id.* ¶ 17, 28.)  The Complaint sufficiently alleges that Defendants were delinquent on their contributions and that, pursuant to the CBAs, Trust Agreements, and ERISA § 502(g), the Trustees are entitled to recover the delinquent contributions, interest, and liquidated damages.  *See Serv. Emps. Int'l*, 325 F. Supp. 3d at 636 (concluding that the plaintiff stated a legitimate cause of action where it alleged that the defendant was delinquent on contributions due to a multiemployer plan and, pursuant to the CBA and ERISA § 502(g), the plaintiff had "the right to recover the unpaid . . . liability, together with the other damages, fees, and costs specified in [ERISA § 502(g)]"); *see also Trs. of the Nat'l Elevator Indus. Pension v. GMS*

*Elevator Servs., Inc.*, CIVIL ACTION NO. 18-00538, 2018 WL 4510495, at *1–2 (E.D. Pa. Sept. 20, 2018) (same); *Bd. of Trs. of the Laborers Dist. Council Const. Indus. Pension Fund v. Phillips Enter., Inc.*, CIVIL ACTION NO. 15-06490, 2016 WL 2939509, at *3–4 (E.D. Pa. May 20, 2016) (same).

> **B.    The *Chamberlain* Factors Support the Entry of Default Judgment**

Now we must consider whether the following factors weigh in favor of the entry of default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain*, 210 F.3d at 164.[7]

First, declining to enter default judgment would prejudice Plaintiffs because Defendant's default has prevented them from litigating this matter and they will not be able to recover the delinquent contributions and other liabilities they are due absent the entry of default judgment. *See Acosta v. Schwab*, No. 5:18-cv-3544, 2019 WL 7046916, at *8 (E.D. Pa. Dec. 20, 2019) ("[D]enying the motion would prejudice the Secretary greatly since the Secretary has been deprived of its ability to litigate the ERISA violations against the Defendants."); *Serv. Emps. Int'l*, 325 F. Supp. 3d at 637 ("Plaintiffs will certainly be prejudiced if default judgment is denied, as Plaintiffs have not yet received the withdrawal liability that they are owed.").

Next, Defendant does not appear to have a litigable defense.  In connection with its motion to vacate the entry of default, Defendant suggested that it may have defenses to the award

---

[7] The Court has already considered essentially the same factors (whether Plaintiffs would be prejudiced if default were vacated, whether Defendant has a meritorious defense, and whether the default was the result of Defendant's culpable conduct) in determining whether to set aside the entry of default. *Trs. of Nat'l Electrical Benefit Fund v. Mirarchi Bros., Inc.*, No. 21-4399, 2021 WL 5835976, at *2–4 (E.D. Pa. Dec. 8, 2021).  We declined to set aside default because "the factors together, and in particular the fact that . . . there is no meritorious defense to the cause of action" weighed in favor of leaving the default in place. *Id.* at *4.

of interest and liquidated damages.  (Doc. No. 8-1 at 4.)  However, Section 502(g), the provision of ERISA that allows trustees of multiemployer plans to recover delinquent contributions, makes clear that courts *must* award interest and liquidated damages in delinquent contribution recovery actions, so Defendant's purported defense is not litigable.  *See Trs. of the Nat'l Electrical Benefit Fund*, 2021 WL 5835976, at *2–3 (explaining that Section 502(g) "includes a *mandatory award* of prejudgment interest plus liquidated damages . . . as well as attorney's fees and costs") (collecting cases).

Finally, Defendant's delay was due to its own culpable conduct.  "Culpable conduct" is conduct that is "taken willfully or in bad faith."  *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 123–24 (3d Cir. 1983).  Defendant was properly served and knew about the lawsuit but nevertheless *chose not to respond* because it was struggling financially and was more focused on "keeping the lights on" than defending against this lawsuit.  (*See* Nov. 30, 2021 Hr'g Tr. At 18:9–19:20 ("The best argument I can come up with [as to why Defendant is not culpable] is to the extent that they have been battling with the secured lender.  They are fighting to keep the lights on every day. . . . They need to keep the doors open and the lights on to be able to pay back money.  And that's where their primary and main focus has been.").)  Financial difficulties do not excuse Defendant's failure to respond, and the admission that Defendant actively chose not to respond only underscores its culpability.  *See Acosta*, 2019 WL 7046916, at *8 ("Defendants' failure or refusal to engage in the litigation process . . . may qualify as culpable conduct with respect to the entry of a default judgment."); *Serv. Emps. Int'l*, 325 F. Supp. 3d at 637 ("Defendant's failure to respond to the complaint and failure to attend the hearing were both "willful," in the sense that Defendant accepted service of the complaint and the order setting the hearing and therefore was aware of the complaint and the hearing.").

Considering these factors together, it is appropriate to enter default judgment against Defendant.

### C.    *Plaintiffs Are Entitled to the Relief Sought and Plaintiffs' Counsel Are Entitled to Attorneys' Fees and Costs*

Plaintiffs have asked the Court to award the delinquent contributions, interest, and liquidated damages (Doc. No. 4), as well as attorneys' fees and costs (Doc. No. 6).

The CBAs and Trust Agreements require Defendant to make monthly contributions to the Benefit Fund and Annuity Plan based on the gross payroll it paid to bargaining workers.  (Doc. No. 1 ¶ 8; Doc. No. 4 at 4.)  Defendant self-reported its payroll numbers to the Benefit Fund and Annuity Plan each month, but, from June 2020 through November 2021, it did not make any payments to the Benefit Fund, and from December 2020 through November 2021, it did not make any payments to the Annuity Plan.  (Doc. No. 4-2 ¶ 13.)  Plaintiffs have submitted Defendant's monthly payroll reports for each month from June 2020 through November 2021 (Doc. No. 4-14) and an affidavit from the Contribution Compliance Manager calculating Defendant's required contributions based on those reports (Doc. No. 4-2).

These documents show that Defendant owes $432,016.65 in delinquent contributions to the Benefit Fund (Doc. No. 15 ¶ 6) and $1,143,568.81 in delinquent contributions to the Annuity Plan (*id.* ¶ 7).  Defendant also owes interest and liquidated damages on the delinquencies. [8]  (*Id.* ¶¶ 6–7.)  Defendant's total liabilities (not including attorneys' fees and costs, which are discussed below) are detailed in the chart below.

|  | Benefit Fund | Annuity Plan |
|---|---|---|
| Delinquent Contributions | $432,016.65 | $1,143,568.81 |
| Interest | $27,940.61 | $59,006.40 |
| Liquidated Damages | $92,663.63 | $270,449.36 |
| **Total** | **$552,620.89** | **$1,473,024.57** |

---

[8] Pursuant to the Trust Agreements, interest is measured at a rate of ten percent per annum, and liquidated damages equal twenty percent of the delinquency.  (Doc. No. 1 ¶¶ 15, 26.)

(*Id.*)

The Trust Agreements also provide that Plaintiffs are entitled to costs incurred in collecting the delinquencies, including court costs and attorneys' fees.  (Doc. No. 1 ¶¶ 15, 26.)

Plaintiffs expended $505.00 in court costs and service of process fees.  (Doc. No. 6-1 at 4.)  Under the plain language of the Trust Agreements, they are entitled to recover these costs. (*See* Doc. No. 1 ¶¶ 15, 26.)  *See also Trs. of the Nat'l Elevator Indus. Pension*, 2018 WL 4510495, at *4 ("Plaintiffs are entitled to $790 in costs, which includes the $400 filing fee for the Complaint and $390.00 for service on Defendants.").

Plaintiffs also seek $7,803.75 in attorneys' fees.  (Doc. No. 6-1 at 4.)  We must apply the lodestar method to determine whether the requested fees are reasonable.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). Under this method, the court must multiply the number of hours reasonably expended by counsel by a reasonable hourly rate.  *Hahnemann Univ.  Hosp. v. All Shore, Inc.*, 514 F.3d 300, 310 (3d Cir. 2008).  Plaintiffs' counsel submitted time records detailing the services provided and accounting for their work on this matter in quarter-hourly increments.  (Doc. Nos. 6-3, 6-4.)  The records show that two attorneys and one paralegal expended a total of 27.25 hours on this matter. (*Id.*)  This is reasonable.  *See Trs. of the Nat'l Elevator Indus. Pension*, 2018 WL 4510495, at *4 (finding that 32.25 attorney hours was a reasonable expenditure of time in ERISA § 502(g) recovery action where the defendant failed to respond); *Serv. Emps. Int'l*, 325 F. Supp. 3d at 638 (finding that approximately 30 hours of attorney time was reasonable in ERISA § 502(g) recovery action where the defendant failed to respond).

The attorneys and paralegal working on this matter all charged different hourly rates ($445.00 for attorney Jennifer Bush Hawkins, $275.00 for attorney Daniel Keenan, and $110.00

for paralegal Caroline Lippie) (Doc. No. 6-1 at 4), but all of the rates charged are reasonable, *see Trs. of the Nat'l Elevator Indus. Pension*, 2018 WL 4510495, at *4 (finding that $267.00 is a reasonable hourly rate for attorneys in an ERISA § 502(g) recovery action); *Serv. Emps. Int'l*, 325 F. Supp. 3d at 638 (finding that an hourly rate of $110.00 was a reasonable hourly rate for paralegals in an ERISA § 502(g) recovery action); *Regional Emp'rs' Assurance Leagues Voluntary Emps. Beneficiary Assoc. Trust v. Castellano*, 164 F. Supp. 3d 705, 714 (E.D. Pa. Feb. 10, 2016) (concluding that attorneys' hourly rates ranging from $400 to $700 were reasonable in ERISA § 502(g) recovery action).

Accordingly, the Court finds that Plaintiffs' request for attorneys' fees and costs is reasonable.

## IV.   CONCLUSION

For the reasons above, the Court grants Plaintiffs' Motion for Default Judgment (Doc. No. 4).  Judgment is entered in favor of the Benefit Fund in the amount of $552,620.89, plus any interest accruing after today's date and in favor of the Annuity Plan in the amount of $1,473,024.57, plus any interest accruing after today's plate.  The Court also grants Plaintiffs' Motion for Attorneys' Fees and Costs (Doc. No. 6) and enters judgment in the amount of $8,308.75, plus any interest accruing after today's date.

An appropriate Order follows.