IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **TRUSTEES OF THE NATIONAL ELECTRICAL BENEFIT FUND, et al.**, <br><br> Plaintiffs, <br><br> *v.* <br><br> **MIRARCHI BROTHERS, INC.**, <br><br> Defendant. | CIVIL ACTION <br><br> NO. 21-4399-KSM |

<u>MEMORANDUM</u>

**MARSTON, J.**                                                                                  **April 6, 2022**

Plaintiffs, Trustees of the National Electrical Benefit Fund (the "Benefit Fund") and Trustees of the National Electrical Annuity Plan (the "Annuity Plan"), brought suit against Defendant Mirarchi Brothers, Inc. to recover unpaid pension fund contributions. (Doc. No. 1.) Defendant failed to respond to Plaintiffs' complaint, and the Court entered default judgment totaling $2,033,954.21 in favor of Plaintiffs on January 24, 2022. (Doc. No. 17.) Plaintiffs have sought to execute the judgment, but Defendant has not satisfied any portion of the judgment. (Doc. No. 19-1 at 2.) Plaintiff now seeks supplementary relief in aid of execution pursuant to Federal Rule of Civil Procedure 69. (Doc. No. 19.) For the reasons below, Plaintiffs' motion is granted.

**I.    BACKGROUND**

   **A.    *Factual Background***

Defendant is an electrical contractor that has signed collective bargaining agreements ("CBAs") with several local unions. (Doc. No. 1 ¶ 7.) Under the terms of the CBAs, Defendant

is required to report and submit payroll reports and contributions to the Benefit Fund and the Annuity Plan on behalf of its employees performing work within the jurisdiction of the local unions.[1]  (*Id.* ¶ 8.)  Although Defendant submitted reports showing it was obligated to make contributions required by the CBAs (*id.* ¶ 10), it has failed to make the requisite contributions for the past year (*id.* ¶¶ 16, 27).  From July 2020 through November 2021, Defendant accrued $432,016.65 in delinquent contributions to the Benefit Fund (Doc. No. 15 ¶ 6), and from December 2020 through November 2021, Defendant accrued $1,143,568.81 in delinquent contributions to the Annuity Plan (*id.* ¶ 7).[2]

On October 6, 2021, Plaintiffs brought suit against Defendant to collect the delinquent contributions pursuant to the CBAs and the Employment Retirement Income Security Act ("ERISA") Sections 502(g) and 515.[3]  (Doc. No. 1.)  Plaintiffs also seek to recover interest, liquidated damages, and attorneys' fees.  (*Id.* ¶¶ 18–19, 29–30; Doc. No. 6 at 1.)

## B.     *Procedural History*

Plaintiffs made personal service on Defendant through a private process server on October 11, 2021.  (Doc. No. 2.)  Defendant's responsive pleading was due on November 1, *see*

---

[1] The CBAs authorize the Benefit Fund and Annuity Plan to recover interest at a rate of 10% per annum on delinquent contributions, liquidated damages equaling 20% of the delinquent contributions, and all costs, including attorneys' fees, incurred in collecting on any delinquency.  (Doc. No. 1 ¶¶ 15, 26.)

[2] The Complaint detailed Defendant's delinquent contributions to the Benefit Fund and the Annuity Plan through August 2021.  (*See* Doc. No. 1 ¶¶ 17, 28.)  On December 17, 2021, Plaintiffs filed an Affidavit Concerning Newly Discovered Amounts Due Plaintiffs, which detailed the Defendant's delinquencies, based on its self-reported work performed, from September through November 2021.  (*See* Doc. No. 15.)

[3] Prior to filing this lawsuit, Plaintiffs attempted to negotiate a payment plan with Defendant.  When the negotiations appeared to stall, Plaintiffs' general counsel informed Defendant that Plaintiffs would be filing suit if they were unable to agree on a payment plan by a certain date.  (*See* Nov. 30, 2021 Hr'g Tr. at 12:19–24 ("The general counsel for these funds identified myself and the firm I work for in e-mails saying if we cannot resolve this by Date X, it is going to be referred to Daniel Keenan at O'Donoghue & O'Donoghue LLP to file an action under 515 in this court.").)

Fed. R. Civ. P. 12(a)(1)(A)(i), but it did not appear, answer, or otherwise respond. On November 2, Plaintiffs requested that the Clerk of Court enter default against Defendant. (Doc. No. 3.) The Clerk of Court entered default on November 4 (*id.*), and Plaintiffs moved for default judgment on November 11 (Doc. No. 4).

Shortly after receiving Plaintiffs' motion, the Court set a hearing for November 30 to show cause why judgment should not be entered and to assess damages (the "Show Cause Hearing"). (Doc. No. 5.) The Court also ordered Plaintiffs to "serve copies of the motion for default judgment, the affidavit detailing attorney's fees and costs, and [the order setting the show cause hearing] upon Defendant, personally, by email and by certified mail, return receipt requested, no later than November 22, 2021." (*Id.* at 1–2.) Plaintiffs timely served upon Defendant (via process server and certified mail) the Motion for Default Judgment, the Motion for Attorneys' Fees and Costs, and the Order setting the Show Cause Hearing. (Doc. No. 7 ¶¶ 4–5.) On November 22, Plaintiffs' counsel also emailed those documents to Defendant's comptroller and Daniel Siedman, an attorney Plaintiffs knew had represented Defendant in a recent bankruptcy proceeding. (Doc. No. 7-3; Nov. 30, 2021 Hr'g Tr. at 5:23–6:13.)

Upon receipt of the email from Plaintiffs' counsel, Mr. Siedman reached out to Defendant and explained the situation it was facing. (Nov. 30, 2021 Hr'g Tr. at 3:4–8; 4:21–5:8.) At this point, Defendant agreed to retain Mr. Siedman to represent it in these proceedings. (*Id.*) On the eve of the Show Cause Hearing, Defendant filed a Motion to Vacate Default Judgment.[4] (Doc. No. 8.) Given Defendant's last-minute motion, the Show Cause Hearing was converted from a hearing on Plaintiffs' Motion for Default Judgment into a hearing on

---

[4] Because the Court had not entered a default judgment in this case, we interpreted this as a motion to set aside default. This distinction was of no practical import, however, because the standard for vacating default is the same as the standard for vacating a default judgment. *See United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

Defendant's Motion to Vacate Default Judgment.[5]  (*See generally* Nov. 30, 2021 Hr'g Tr.)  Subsequently, Plaintiffs filed a response brief opposing Defendant's motion.  (Doc. No. 11.)  The Court denied Defendant's Motion to Vacate Default Judgment on December 8, 2021.  (Doc. No. 13.)

On January 24, 2022, the Court granted Plaintiffs' Motion for Default Judgment and entered judgment in Plaintiffs' favor totaling $2,033,954.21.  (Doc. No. 17.)  On February 24, 2022, Plaintiffs filed a Motion for Supplementary Relief in Aid of Execution of Judgment, requesting that the Court to enter an order "maintaining the status quo by enjoining Defendant Mirarchi Brothers, Inc. from transferring, assigning, conveying, encumbering or otherwise disposing of any real, personal or intangible property including funds, bank accounts, construction material, resources or tools, vehicles, and heavy equipment."  (Doc. No. 19.)  Plaintiffs argue that such an order is justified under Federal Rule of Civil Procedure 69 and Pennsylvania Rule of Civil Procedure 3118 because Defendant has not satisfied any portion of the judgment the Court entered against it, Defendant owns real, personal, and intangible property that is available to satisfy the judgment, and Plaintiffs would be prejudiced if Defendant dissipates or encumbers such property.  (*Id.* at 1–2.)  The Court ordered Defendant to respond to Plaintiffs' motion by March 4, 2022, if at all.  (Doc. No. 22.)  Defendant did not respond to Plaintiffs' motion.  (*See generally* Docket, *Trs. of the Nat'l Elec. Benefit Fund v. Mirarchi Bros., Inc.*, No. 21-4339 (E.D. Pa.).)

## II.   DISCUSSION

Federal Rule of Civil Procedure 69 governs the execution of money judgments.  It

---

[5] Although the Show Cause Hearing was converted to a hearing on Defendant's Motion to Vacate Default Judgment, the Court did not hold another Show Cause Hearing, as Defendant conceded that it had no reason to dispute the delinquencies as calculated.  (*See* Nov. 30, 2021 Hr'g Tr. at 3:22–23; 16:19–21.)

provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of execution—must accord with the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(1). Pennsylvania Rule of Civil Procedure 3118 sets forth the procedure plaintiffs must follow to obtain supplementary relief in aid of execution. Pa. R. Civ. P. 3118. Under this rule, the court in which a judgment has been entered may enter an order "enjoining the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution." *Id.*

To demonstrate entitlement to relief under Rule 3118, a plaintiff must establish "(1) the existence of an underlying judgment; and (2) property of the debtor subject to execution." *Marshall Ruby & Sons v. Delta Mining Co.*, 702 A.2d 860, 862 (Pa. Super. Ct. 1997). The plaintiff need not establish "the traditional requirements for an injunction" for relief under Rule 3118. *Kaplan v. I. Kaplan, Inc.*, 619 A.2d 322, 326 (Pa. Super. Ct. 1993).

Plaintiffs have satisfied both requirements. First, the Court entered a judgment against Defendant and in favor of Plaintiffs on January 24, 2022 in the amount of $2,033,954.21. (Doc. No. 17.) Second, Plaintiffs have asked the Court to enjoin the transfer of Defendant's real, personal, and intangible property, which are subject to execution. *See* Pa. R. Civ. P. 3118; *see also Ctr. Capital Corp. v. PRA Aviation, LLC*, Civil Action No. 09–4323, 2014 WL 1281060, at *2 (E.D. Pa. Mar. 31, 2014) (explaining that real property and an individual's share of partnership assets are "personal property subject to execution).

Moreover, Plaintiffs would also be prejudiced were Defendant freely permitted to transfer its assets, as Defendant's former bankruptcy counsel appeared before the Court and asserted that it will be "extremely difficult, if not impossible" for Plaintiffs to execute and collect on any judgment. (*See* Doc. No. 19-1 at 3.)

**III.     CONCLUSION**

      For these reasons, the Court grants Plaintiffs' Motion for Supplementary Relief in Aid of Execution of Judgment.  An appropriate Order follows.